IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. HUDSON, | : | CIVIL ACTION NO. **3:CV-05-0104** |
| Petitioner | : | (Judge Conaboy) |
| v. | : | (Magistrate Judge Blewitt) |
| BENJAMIN MARTINEZ, et al., | : | |
| Respondents | : | |

## **REPORT AND RECOMMENDATION**

On January 14, 2005, while incarcerated at the State Correctional Institution at Coal Township, Coal Township, Pennsylvania ("SCI-Coal Township"), the Petitioner, John D. Hudson, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner is incarcerated as a result of a 1986 criminal case, # 86-10205, and convictions for involuntary deviate sexual intercourse, statutory rape, and corruption of minors in the Lebanon County Court of Common Pleas. He seemingly began to serve his sentence in 1988. (Doc. 1, p. 8 & Doc. 14, p. 1 & Doc. 13, Ex. A, ¶'s 23.-24.).[1] Petitioner paid the requisite filing fee. The Respondents, Benjamin Martinez, Chairman of the Pennsylvania Board of Probation and Parole (the "Board"), and the Board, filed their Response to the Petition with exhibits on February 24, 2005. (Doc. 13).

---

[1] We note that the first page number on the Habeas Petition (Doc. 1) is 2, but for present purposes we shall refer to the actual pages of the Petition as they are sequentially found. Also attached to the Petition is a continuation page to which we refer as page 7 and a habeas cover sheet, to which we refer as page 8.

Thereafter, Petitioner filed a Traverse. (Doc. 14). The Petition is ripe for disposition.

We give the Petition preliminary consideration and conclude that, based on a recent case of this Court[2], the Petition should be granted to the extent that the Court should enter an Order directing the Pennsylvania Board of Probation and Parole (the Board) to re-adjudicate Petitioner's parole application applying the pre-1996 Pennsylvania Parole Act and rules.

**I. State Procedural History.**

Petitioner indicates that he was charged sometime in 1986, and that he entered a not guilty plea. He then had a jury trial and was found guilty of involuntary deviate sexual intercourse, statutory rape and corruption of minors. He apparently was sentenced in or around 1988 or 1989 to 10 to 25 years in prison. (Doc. 1, p. 8 & Doc. 14, p. 1 & Doc. 13, Ex. A, ¶'s 23.-24.). His minimum sentence date was August 6, 1999, and his maximum sentence date is August 6, 2014. (*Id.*).[3]

After serving approximately ten (10) years of his sentence, on or about June 16, 1999, Petitioner had a parole hearing before the Board. The record reveals that the Board issued a decision on June 16, 1999, in which it held, in part, that:

---

[2]*See Adams v. Kelchner*, 2004 WL 2634357 (M.D. Pa. 2004) (J. Conaboy). As will be discussed, the Respondents do not address the *Adams* case in their Brief. (Doc. 13).

[3] Petitioner's state criminal procedural history is sparse as neither party provides much detail. (Doc. 1 & Doc. 13).

> Following an interview and review of your file, the Board of Probation and Parole, has determined that the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole.
>
> You are therefore refused parole ... .

(Doc. 13 at Exhibit A-B).

The Board also included detailed required events that would impact its next parole decision. (*Id*.). The Board indicated that one thing which it would consider was whether the Petitioner completed a sex offender treatment program. Thus, Petitioner was denied parole, and his case was ordered to be reviewed in or after August, 2001. (*Id*. & Castor Declaration at ¶ 25.).

Petitioner reappeared before the Board on or about August 27, 2001, and it again denied Petitioner parole. (*Id*. at Exhibit A-C).[4] The Board recorded a Notice of Board Decision on August 27, 2001, in which it set a new parole hearing in or after August, 2003. The Board, in its August 27, 2001, decision stated, in part, the following reasons for denying Petitioner parole:

---

[4]While the Respondents indicate that Petitioner had only two parole decisions (Doc. 13, p. 3) and Castor's Declaration references parole decisions on June 16, 1999, on September 29, 2003, and on August 29, 2003 (Doc. 13, Ex. A, ¶ 26.), the record shows that Petitioner had parole decisions of the Board denying him parole issued on June 16, 1999, August 27, 2001 and September 29, 2003. (Id., Ex. A-C). The final Board decision was dated September 29, 2003, contrary to Castor's Declaration at ¶ 28.
   Petitioner, in his habeas petition, refers to the Board's September 29, 2003, decision (hearing date of September 23, 2003) as the Board's last decision denying him parole and as the decision which he is challenging in this case. (Doc. 1, pp. 1, 4 & 8). In his Traverse, Petitioner also refers to the Board's September, 2003 decision as the one he attacks in this case. (Doc. 14, p. 2).

3

> Following an interview and review of your file, the Board of Probation and Parole, has determined that the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole.
>
> You are therefore refused parole ... .

(*Id.* at Exhibit B).

The Board also included detailed considerations it would look at the time of Petitioner's next parole hearing, including whether he completed a sex offender treatment program. (*Id.*).

In both of the stated decisions, the Board utilized the requirements of the 1996 amended Pa. Parole Act in denying Petitioner parole. (Doc. 13, Exhibits B-C).

The Board recorded its final Notice of Board Decision in this case on September 29, 2003, in which it set a new parole hearing in or after August, 2005. The Board, in its September 29, 2003, decision stated, in part, the following reasons for denying Petitioner parole:

> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq., the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time.

(*Id.* at Exhibit C).

In this last parole decision, which is challenged herein, the Board utilized the requirements of the 1996 amended Pa. Parole Act in denying Petitioner parole. (Doc. 13, Exhibit C). The Board clearly considered, in part, the public safety concerns pursuant to the 1996 amendment to the Parole Act. The Board also indicated that Petitioner needed to complete additional institutional programs, including the sex offender treatment program.

4

The Petitioner filed a Petition for Administrative Relief with the Board, requesting the Board to reconsider its September 29, 2003, decision. (Doc. 1, pp. 2, 8). The Board denied this Petition. The Petitioner then filed a Petition for Review (Mandamus) with the Pennsylvania Commonwealth Court. This Court denied the Petition on July 12, 2004, in a *per curiam* Order. (*Id*.). The Petitioner then exhausted his administrative remedies with the state courts by filing a petition for allocator with the Pennsylvania Supreme Court, which he states was denied on October 7, 2004. (*Id*.). Petitioner indicates that in his state court appeals he raised his present ex *post facto* claims. (*Id*. ,p. 2, ¶ 9.).

The Petitioner essentially states in the Grounds for his Petition that the Board, in denying him parole in its September, 2003, decision, improperly applied standards under the 1996 amendment to the Pennsylvania Parole Act which preceded the date of his conviction. The Petitioner claims that prior to the 1996 amendment, the Board granted inmates parole without requiring them to admit their guilt and to complete a sex offender program and that these were the grounds which the Board used to deny him parole. (Doc. 1, p. 4, ¶ 12. A. & B.). Thus, Petitioner claims that the Board improperly applied the 1996 Parole Act amendment to its parole decisions in his case, including consideration of the public safety (Doc. 14, pp. 2-3), and imposed requirements on him which were not made of inmates prior to the amendment. The Petitioner also claims that the Board's requirement that he complete a sex offender treatment program, in which he would have to admit his guilt, violates his "1st Amendment" "right not to speak," his right to access to the courts since he would not be able to file a § 1983 civil rights suit after he completes his sentence and since the Board was denying him parole on the basis that he was still fighting his

conviction in court which would be moot if he had to admit his guilt. (Doc. 1, p. 5). Petitioner further states that if he is forced to admit his guilt, then it is a violation of his right against self-incrimination. (*Id.*, p. 5, ¶ 12. C. & p. 7, continuation page). As his final claim, Petitioner states that the Board violated the *ex post facto* clause since it was supposed to use the parole standards which were in effect in July, 1984, when he committed his crimes and which prior standards did not require a sex offender inmate to complete treatment programs, admit their guilt and obtain prison recommendations for parole. Petitioner concludes that "the Board is acting different than it had prior to 1996." (*Id.*, ¶ 12. D.).

Subsequent to the Board's decisions and Petitioner's appeals to the state courts, the Petitioner filed the instant Habeas Corpus Petition with this Court on January 14, 2005. (Doc. 1).

Petitioner avers that he filed this Petition for habeas relief with this Court, challenging the decisions of the Board as unconstitutional since the Board applied the 1996 parole amendment retroactively to his case for his 1986 arrest (approximate 1988 conviction). Thus, he claims, in part, that the Board violated the *ex post facto* clause. Petitioner seemingly seeks to have this Court direct the Board to conduct a new a parole hearing in which it applies the parole standards that existed before the 1996 amendment. (Doc. 1, Grounds).[5]

---

[5]Petitioner's present Habeas Petition, which does not attack his state court judgment, was timely filed under the AEDPA statute of limitations period. The Habeas Petition was filed within one year after the Petitioner's final appeal of the Board's September 29, 2003, decision was denied by the Pennsylvania Supreme Court, *i.e.*, appeal denied on October 7, 2004, and Habeas Petition filed on January 14, 2005. (Doc. 1, pp. 1-2, 8). The present Petition was filed within one year of the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(D). In this case, Petitioner filed his Habeas Petition on January 14, 2005, which was within one year of the final denial of Petitioner's state court appeal of the Board's challenged September 29, 2003,

Petitioner primarily contends that he is entitled to habeas relief due to the Board's application of amended parole standards which were not in effect at the time he was arrested seemingly in June, 1984 (Doc. 14, p. 2). and at the time his crimes were committed (as opposed to the time he was sentenced and convicted) and which resulted in the Board's denial of his parole, in violation of the constitutional protection against *ex post facto* laws. (Doc. 1, Grounds). In essence, Petitioner claims that his denial of parole violated the constitution, since the 1996 parole standards were applied retroactively to his 1984-1986 crimes. (*Id.*).

## II. Discussion.

*1. Exhaustion of State Remedies.*

Ordinarily, a state prisoner must exhaust his state court remedies before the federal courts consider the claims. 28 U.S.C. §2254(b); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982). As the Third Circuit recently stated:

> Exhaustion, however, is not a jurisdictional matter but a matter of comity. *See Story v. Kindt,* 26 F.3d 402, 405 (3d Cir. 1994). Federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy. *Id.;* 28 U.S.C. § 2254(b)(1)(B).

*Lee v. Stickman*, 357 F. 3d 338, 341 (3d Cir. 2004). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999).

---

decision. Specifically, Petitioner's present Petition was filed within one year after the Pennsylvania Supreme Court denied his final appeal of the stated Board decision. Further, the Respondents do not raise the statute of limitations as a defense in this case. (Doc. 13). Thus, we shall not further address it.

As stated, Petitioner, in his Petition, indicates that he filed his present claims in a Petition for Review challenging the Board's September, 2003, decision to deny him parole with the Pennsylvania Commonwealth Court and that he then filed an appeal to the Pennsylvania Supreme Court.[6] Respondents do not raise exhaustion as an issue in their Response. Thus, exhaustion of administrative remedies is not an issue in this case. The Petitioner, as mentioned, avers that he timely appealed the Board's decisions to the state courts, but was denied.[7]

In light of the Petitioner's undisputed appeals to the state courts, we find that he has completely exhausted his state court remedies in this case. Thus, based on the Petitioner's claim that he appealed the Board's September, 2003, decision with respect to the issues presented in this case, we find that Petitioner has satisfied the exhaustion requirement.[8]

---

[6]The Pennsylvania Supreme Court has held that it is within the jurisdiction of the Commonwealth Court to hear petitions for review (mandamus petitions) challenging Board decisions based on *ex post facto* claims. *See Coady v. Vaughn*, 564 Pa. 604, 770 A. 2d 287, 290 (2001).

[7]In his Habeas Petition, the Petitioner indicates that as a result of the Board's September, 2003, decision denying him parole, he received a "two (2) year parole hit" as the length of his current sentence. (Doc. 1, p. 1). We interpret Petitioner to mean that, since the Board denied him parole in its September, 2003, decision and directed that Petitioner would be reviewed again for parole in or about August, 2005, the Petitioner has to wait in prison another two years until his next consideration for parole by the Board.

[8]Even if Petitioner did not fully exhausted his state court remedies, state case law presently may not arguably permit him the relief he is seeking and thus, an exception to the exhaustion requirement may have applied in this case. *See* 28 U.S.C. §2254(b)(1)(B); *Hollawell v. Gillis*, 2003 WL 1919371 *4 (3d Cir. 2003), *cert. denied*, ___U.S.___, 124 S. Ct. 229 (2003).

*2. Ex Post Facto Violation: Merits*

Respondents argue that, since Petitioner's case is distinguishable from the Third Circuit precedent on which Petitioner relies in support of his *ex post facto* claims he raises in this case (Doc. 14, p. 2), namely *Mickens-Thomas v. Vaughn*, 321 F. 3d 374 (3d Cir. 2003), *cert. denied*, ___U.S.___, 124 S. Ct. 229 (2003), and since the Pennsylvania Supreme Court in *Winklespecht v. Pa. Bd. of Prob. & Parole*, 813 A. 2d. 688 (Pa. 2002), held that the 1996 amendment to § 331.1 of the Parole Act does not violate the *ex post facto* clause, there is no merit to Petitioner's Habeas Petition.[9]

Basically, Petitioner is claiming that he was improperly denied parole by the Board because it applied standards in his case which post-dated the commission of his crimes (not his conviction). Petitioner challenges the Board's denial of his parole based on the 1996 amendment to the Pennsylvania Parole Act, which was not in effect at the time of the commission of his crimes and of his approximate 1986 arrest (criminal case # 86-10205). Respondents have been served with and have responded to the instant Petition, and they have submitted Exhibits attached to their Response to Petitioner's Habeas Corpus Petition. These exhibits, namely the Board's decisions, show that the Pennsylvania Parole Board did, in fact, rely, in part, upon the amended provision of the Pennsylvania Parole Act in denying Petitioner parole on September 29, 2003, by specifically referencing that its decision was made pursuant to the Pa. Parole Act of 1941, as amended, 61 P.S.

---

[9]Briefly, the Pennsylvania Supreme Court in *Winklespecht*, in considering whether the 1996 parole amendment violates the *Ex Post Facto* Clause, "held that the Pennsylvania amendment was only a new expression of a standard that had previously been inherent in the law." *Hollawell v. Gillis*, 2003 WL 1919371 *7 (3d Cir. 2003), *cert. denied*,---U.S.---, 124 S. Ct. 229 (2003). However, the Third Circuit, in *Hollawell,* held that the Pennsylvania amendment constituted a law for *Ex Post Facto* purposes and that this amendment violated the *Ex Post Facto* Clause. *Id*. at *5 & *7.

§ 331.1, *et seq.*, (*See* Doc. 13, Exhibit C). Thus, the Board considered the amendment to the Parole Act in denying Petitioner parole. (*Id.*).

Initially, we agree with the Petitioner that the date he committed his offenses governs whether the application of the 1996 amendment to the Parole Act violates the *Ex Post Facto* Clause in his case. *See Lyons v. Mendez*, 303 F. 3d 285 (3d cir. 2002); *U.S. v. Audinot*, 901 F. 2d 1201 (3d Cir. 1990); *U.S. ex rel. Forman v. McCall*, 709 F. 2d 852 (3d Cir. 1983) (date of offense rather than date of sentence is focal point in analyzing ex *post facto* claim). We also agree with Petitioner that the 1996 amendment was effective after his arrest and conviction, *i.e.*, December 18, 1996. *See* 61 P.S. § 331.1. (Doc. 13, p. 2, n. 2).

Our review of the State Parole Board decision is limited to an abuse of discretion inquiry, in that relief is only available if an applicant was arbitrarily denied parole on the basis of impermissible criteria such as race, religion, or political beliefs, or on criteria with no rational relationship to the purpose of parole. *Block v. Potter*, 631 F. 2d. 233, 237 (3d Cir. 1980). Petitioner asserts that he was denied parole based on the impermissible retroactive application of the 1996 amendment by the Board to its parole decisions, in violation of the *ex post facto* clause of the Constitution.

Thus, the Petitioner's *ex post facto* claim is that the Pennsylvania Parole Board's decision of September 29, 2003, to deny him parole was based on constitutionally impermissible reasons -- namely, that the Board impermissibly applied to his parole application parole standards amended in 1996, which were not in effect at the time of the commission of his crimes. Petitioner thus claims that the decision rendered by the Pennsylvania Parole Board violated his constitutional right

prohibiting *ex post facto* laws by relying upon the best interests of the Commonwealth and the "Fair Administration of Justice." (Doc. 14, p. 3).[10]

As Respondents recognize (Doc. 13, pp. 11-13), it is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Furthermore, it has been held that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. *Rodgers v. Parole Agent SCI-Frackville, Wech*, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); *McCrery v. Mark*, 823 F. Supp. 288, 294 (E.D. Pa. 1993). However, the United States Court of Appeals for the Third Circuit has also held that "[E]ven if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process

---

[10] As stated, Petitioner also claims that the Board's requirement that he successfully complete a sex offender treatment program violates his constitutional right to access to the courts by preventing his further appeals of his convictions, and his right against self-incrimination by making him admit his guilt, which is necessary for participation in such a program. The Third Circuit recently rejected similar claims made by an inmate in a § 1983 civil rights case filed in the Middle District of Pennsylvania. In *Branch v. Horn*, Appeal No. 99-3507 (3d Cir. 2005) (Per Curiam) (non-precedential), the Court held that the inmate's refusal to admit guilt did not deprive him of eligibility for parole and it did not deny him his right to access to court. The Court stated that "[n]ot receiving a recommendation for parole is a consequence of [the inmate's] own choice not to admit guilt and participate in the [sex offender treatment] program." *Id*. at slip op. p. 3.

Thus, we find no merit to the Petitioner's stated First Amendment, Fifth Amendment, and Fourteenth Amendment claims. (Doc. 1, p. 5, ¶ 12 C. & D.). We shall only address Petitioner's *ex post facto* claim. We shall not address whether Petitioner was improperly denied parole because of his repeated failure to participate in the sex offender treatment program, which was one factor considered by the Board. We shall limit our inquiry as to whether the Board denied Petitioner parole, at least in part, based on the more stringent 1996 amended parole standard.

clause in not being denied parole for arbitrary or <u>constitutionally impermissible reasons</u>." *Block*, 631 F. 2d. at 236 (Emphasis added). Accordingly, even where a state statute grants discretion to the state parole board to condition or completely deny parole, it may not permit "totally arbitrary parole decisions founded on impermissible criteria." *Id*. Consequently, a federal court may review a decision by a state parole board for an abuse of discretion. *Id*. Upon such review, relief will only be available if an applicant can show that parole was arbitrarily denied based on some impermissible reason such as "race, religion, or political beliefs," or that the parole board made its determination based on "frivolous criteria with no rational relationship to the purpose of parole." *Id*. at 236 n. 2. Petitioner claims that the Board's September, 2003, decision was based upon the constitutionally impermissible retroactive application of new parole amendments to his case.

As previously noted, it has been repeatedly recognized that Pennsylvania State Law does not confer its inmates with a legally protected interest in parole eligibility. However, in two recent cases similar to Petitioner's, the Third Circuit has held that the Pennsylvania 1996 statutory change to the Parole Act, which expressed, in part, "for the first time that 'the board shall first and foremost seek to protect the safety of the public,'" violates the *ex post facto* clause when applied to prisoners convicted prior to the amendment. *Hollawell, supra* at *5-*6; *Mickens-Thomas v. Vaughn*, 321 F. 3d 374 (3d Cir. 2003), *cert. denied*, __U.S.__, 124 S.Ct. 229 (2003).[11] The Third Circuit recognized that a parole decision is subject to collateral attack on constitutional grounds such as the *Ex Post*

---

[11]In *Hollawell*, the Third Circuit stated that "*Mickens-Thomas* clearly holds as a legal matter that the Pennsylvania statutory change violates the *Ex Post Facto* Clause." *Hollawell* at *7.

*Facto* Clause. *Id*. This is precisely Petitioner's claim in our case. The Third Circuit applied the test annunciated by the United States Supreme Court in *Cal. Dept. of Corr. v. Morales,* 514 U.S. 499, 509 (1995), in determining that the Pennsylvania 1996 parole law amendment violated the *Ex Post Facto* Clause if it was applied to pre-1996 prisoners. *Id*. Specifically, the *Mickens-Thomas* Court "held that Pennsylvania's change to the parole statute altered the manner in which the Parole board weighed public safety in making parole decisions... ." *Id*. at *7. In *Mickens-Thomas*, the Third Circuit held that the 1996 amendments changed the substantive criteria for parole release in Pennsylvania. *Mickens-Thomas,* 321 F. 3d at 392. In both *Mickens-Thomas* and *Hollawell,* the Third Circuit directed that the District Court remand the Petitioners' parole applications to the Pennsylvania Parole Board for re-adjudication applying the pre-1996 law.

Furthermore, as Respondents point out, we acknowledge that the Pennsylvania Courts have held that the denial of parole, in cases similar to our Petitioner's, was not based on constitutionally impermissible reasons. As Respondents state, the Pennsylvania Courts have previously rejected the *ex post facto* claim which Petitioner raises regarding the amended statement of Policy of the Pennsylvania Parole Act. (Doc. 13, pp. 3, 7, 9). Moreover, one of the Pennsylvania cases which the Respondents reference is the Pennsylvania Supreme Court case of *Winklespecht, supra.* (*Id*., pp. 3-4, 9). In *Winklespecht*, as noted, the Pennsylvania Supreme Court held that the 1996 amendment did not change Pennsylvania policy as to the criteria for parole, and it did not create a new offense or increase the penalty for an existing offense.[12]

---

[12]The Pennsylvania Commonwealth Court in *Voss v. Pennsylvania Bd. Prob. and Parole*, 788 A.2d 1107, 1111 (Pa. Cmwlth. 2001), stated that under the 1996 amendment, the Board is required "to seek first and foremost to protect the safety of the public." The *Voss* Court further

Notwithstanding the decisions of the Pennsylvania Courts, which found that the 1996 amendment did not enact a substantive change in Parole Board policy, the Third Circuit noted that *Mickens-Thomas,* which "clearly holds as a legal matter that the Pennsylvania statutory change violated the Ex Post Facto Clause," is binding precedent on it. *Hollawell* at *7. This Court must also follow *Mickens-Thomas,* and in doing so we find that this Court should direct the Pennsylvania Parole Board to reconsider Petitioner's parole application and its September 29, 2003, decision under pre-1996 law and rules.[13] Thus, we shall make the recommendation that the Court grant the

---

stated that "the public policy as to parole changed in 1996 from client-centered policy emphasizing rehabilitation to one that emphasizes public safety... ." *Id*.

[13] We note that this Court has previously considered the issue presented in the instant Habeas Petition, and there is a split of authority. Respondents have cited to and have attached several cases of this Court to its Response as exhibits, which found no *ex post facto* violations, and we shall not list them herein. (Doc. 13. Exhibits D-K & Doc. 13, pp. 10-11). However, we find that the present case is more akin to the *Adams* and *Pisa v. Parole Board*, Civil No. 04-1079 (M.D. Pa. 2004) (following *Adams*) cases in which this Court granted the petitions to the extent that the Court directed new parole hearings under the pre-1996 parole standards. In *Adams*, this very Court issued an Order directing the Pennsylvania Parole Board to re-adjudicate Petitioner's parole application and its decision denying parole, by applying the pre-1996 law and rules. As in *Adams,* we find that in our case, there is an absence of specific evidence showing that the post-*Winklespecht* Board decision had been made using the pre-1996 criteria and under no influence of a mistaken understanding of the 1996 amendment. Further, we do not find Castor's Declaration at ¶ 27., Doc. 13, Ex. A, to suffice as the specific evidence required. Castor avers that the Board's decision to deny Petitioner parole after the 1996 amendment was not affected by the amendment since the Board did not implement any new criteria in the parole decision making process as a result of the amendment . *Id*. Petitioner submitted an April, 1988, Parole Decision Making Guideline Form of the Board attached to his Traverse, Doc. 14, Ex. 1, which he claims does not mention requirements upon which the Board relied to deny him parole, such as the interests of the Commonwealth or the "Fair Administration of Justice" standards. (Doc. 14, pp. 1, 3).

The Third Circuit in *Nolan v. Gillis*, 2004 WL 1110432 (3d Cir. 2004), held that if the District Court found that the Board relied upon the 1996 amended parole act, it was appropriate, under *Mickens-Thomas,* to order the Board to re-adjudicate Petitioner's parole

Petition to the extent stated in light of clear guidance on the issue presented in this matter from the Third Circuit and this Court in *Adams*.[14]

As stated, Petitioner maintains that the Parole Board should not have utilized the 1996 amended parole standards in his case as a basis to deny him parole. Petitioner's challenge of the Parole Board's decision is based on a constitutionally recognized reason, according to *Mickens-Thomas* and *Hollawell*. Therefore, it will be recommended that his Petition be granted to the extent that the Court enter an Order directing the Pennsylvania Parole Board to re-adjudicate Petitioner's parole application and its September 29, 2003, decision, by applying the pre-1996 law and rules. *See also McLaurin v. Larkins*, 2003 WL 22147497 (3d Cir.).[15]

---

application under the pre-1996 standards. As discussed above, we find that the Board did rely, in part, on the 1996 amendment to the Parole Act with respect to its September, 2003, decision in Petitioner's case.

Further as this Court in *Adams* stated, "we cannot say that the Third Circuit Court of Appeals would agree with *Winklespecht*... " and that this case's failure to consider the 1996 statutory changes from a perspective similar to *Mickens-Thomas*, "cautions against adopting Respondent's argument." Slip op. at p. 20. Our Respondents make a similar argument herein. (Doc. 13, pp. 8-10). The *Adams* Court also was not persuaded that *Mickens-Thomas* dicta should be applied as narrowingly as this Court did in the cases largely cited by Respondents, which found the *Winklespecht* timing issue dispositive. Slip op. p. 19.

[14]The Respondents do not address the *Adams* and *Pisa* cases in their Response, nor do they attempt to distinguish them from the present case. (Doc. 13, pp. 10-11).

[15]In *McLaurin* at *2, the Third Circuit noted that in both the *Hollawell* and *Mickens-Thomas* cases, it directed the District Court to order the Board to conduct new parole hearings for petitioners, applying the pre-1996 statute. The Court also stated that notwithstanding Petitioner McLaurin's challenge to several new parole requirements in addition to the Parole Act's public policy statement (which alone was challenged in *Mickens-Thomas*), the District Court should consider his *ex post facto* claims in light of *Mickens-Thomas*.

**III. Recommendation**.

Based on the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus be granted to the extent that the Court enter an Order directing the Pennsylvania Parole Board to re-adjudicate Petitioner's parole application and its September 29, 2003, decision, by applying the pre-1996 law and rules.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: March 24, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN D. HUDSON, | : | CIVIL ACTION NO. **3:CV-05-0104** |
| Petitioner | : | (Judge Conaboy) |
| v. | : | (Magistrate Judge Blewitt) |
| BENJAMIN MARTINEZ, et al., | : | |
| Respondents | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 24, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                          <u>  s /Thomas M. Blewitt  </u>
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**

**Dated: March 24, 2005**